# H. N. Maffei, Appellant, v. Louis Ginocchio et al., trading as Ginocchio, Costa & Company, Appellees.

## Gen. No. 25,461.

1.    SALES, § 73*—*when contract of sale is modified.* Where a contract of sale provided that the goods "should be shipped about the middle of October," and thereafter a letter of credit was mailed to the seller, which provided that it should "be in force until October 31," the contract was modified so as to permit shipment any time prior to October 31.

2.    SALES, § 200*—*when title to property sold passes.* Under the Uniform Sales Act, par. 2, sec. 20 [Callaghan's 1916 Stat. ¶ 10021(23)] and paragraph (a), sec. 22 [Callaghan's 1916 Stat. ¶ 10021(25)], where goods have been delivered to a vessel for transportation to the buyer and the bill of lading is retained by the seller in accordance with a contract stipulation that such retention is "only for the purpose of securing performance by the buyer of his obligations under the contract," the goods are at the buyer's risk from the time they are put on the vessel, and the loss of the goods at sea thereafter is on the buyer.

3.    SALES, § 158*—*when failure to notify of shipment does not relieve buyer of loss.* Under the Uniform Sales Act, par. 3, sec. 46 [Callaghan's 1916 Stat. ¶ 10021(49)], a seller is not required to notify the buyer of the delivery of goods to the steamship company, for the purpose of effecting insurance, where the contract of sale expressly provides "Marine and war insurance to be covered by consignees," and a letter of credit to seller states that such insurance has been effected.

Appeal from the Municipal Court of Chicago; the Hon. LEO J. DOYLE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1919. Reversed and judgment here. Opinion filed December 22, 1920.

FISHER, BOYDEN, KALES & BELL, for appellant; DARRELL S. BOYD, of counsel.

CULVER, ANDREWS, KING & STITT, for appellees.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Plaintiff brought suit against defendants to recover $2,545, being the contract price for 300 bags of Mountain Naples walnuts. The case was tried before the court without a jury and at the close of plaintiff's case, on motion of defendants, there was a finding and judgment in favor of defendants, to reverse which plaintiff prosecutes this appeal.

The record discloses that plaintiff was a dealer in nuts and other alimentary products in Naples, Italy, and defendants were dealers in food products in Chicago; that on or about August 5, 1916, they entered into a written contract whereby plaintiff agreed to sell and defendants agreed to buy 300 bags of No. 1 Sorrento walnuts and 300 bags of Mountain Naples walnuts for a certain specified price. The contract provided that payment should be made within 90 days, "Confirmed bankers' letter of credit," and that the nuts should be shipped about the middle of October, 1915, on a direct steamer to New York, in bond to Chicago. It further provided, "Marine and war insurance to be covered by consignees," and that plaintiff should not be held responsible for any failure in shipping on account of shortage of tonnage, lack of steamers, or other reasons beyond his control. The 300 bags of Sorrento walnuts were shipped about October 24, later received and paid for. The 300 bags of Mountain Naples walnuts were placed on board the *S. S. Ancona* at Naples, Italy, on October 30, 1915. This boat left Naples for New York about November 6, and on that or the next day it was torpedoed and sunk, apparently by a submarine of the Central Empire then engaged in the World War.

The record further shows that on August 14, 1915, defendants obtained from the Continental & Commercial National Bank of Chicago a letter of credit to plaintiff at Naples, drawn on a bank in that city. This letter authorized the Naples bank to pay plaintiff for the nuts upon presentation of the bills of lading

drawn to the shipper's order and by him indorsed. It contained the following: "Insurance, including war risk, effected by the importers. .* * * This credit to be in force until October 31, 1915." The letter of credit was inclosed in a letter written by defendants to plaintiff dated August 16, 1915, wherein they stated that they inclosed the letter of credit in payment for the 600 bags of nuts. This letter with the inclosure was apparently received in due course by plaintiff. The evidence further tends to show that plaintiff endeavored to make shipment of the nuts on or about October 20, but was unable to do so on account of the shortage of ocean tonnage; that on October 26 the 300 bags of No. 1 Sorrento walnuts were shipped on the *S. S. Patria,* were delivered to defendants in due course and paid for; that afterwards, on October 30, plaintiff delivered to the steamship company at Naples the 300 bags of Mountain Naples walnuts and received from the steamship company a bill of lading made out to his own order which he indorsed. This, the evidence shows, was on Saturday and too late for the plaintiff to go to the bank that day with the letter of credit and the bill of lading to obtain payment for the nuts. The next day was Sunday and the following Monday and Tuesday were legal holidays in Italy, so that the first day presentation could be made to the bank was Wednesday, November 3. On that day plaintiff presented the letter of credit together with the bill of lading properly indorsed and demanded payment, but the bank refused on the ground that the letter of credit authorized payment only until October 31. On November 1, plaintiff cabled his New York agent that he had placed the 300 bags of walnuts on board the *Ancona* for defendants. On the same day plaintiff's New York agent wrote defendants as follows: "Have cable advice from H. N. Maffei to the effect that on the *S. S. Ancona,* which will sail from Naples on the 9th inst., he will make shipment of 300 bags of Moun-

tain Naples walnuts on account of your contract.''
On November 3, defendants acknowledged receipt of
this letter. When the Naples bank refused payment
to the plaintiff for the nuts on November 3, he took
the matter up by cable with defendants and on No-
vember 8, defendants wrote plaintiff's agent in New
York City stating that they had countermanded the
letter of credit but that on that date they had again
authorized payment of the letter. Upon ascertaining
that the *Ancona* had been torpedoed and sunk, pay-
ment not having been made, the bills of lading were
forwarded to defendants and payment demanded,
which was refused. The evidence further shows that
on account of the war the time when vessels would
sail, the number of them and the available cargo space
were so uncertain that no one could tell whether a
vessel would sail on the date scheduled, or at another
date, or at all. Nor could it be known that a particular
boat would carry merchandise even though it did sail
at the appointed time, because there was a great short-
age in this respect.

Defendants first contend that the judgment of the
municipal court was right and should be affirmed for
the reason that the nuts were not shipped within the
time provided in the contract, viz.: ''About the mid-
dle of October''; that they were not put on the boat
at Naples until October 30, long after the time they
should have been loaded, and, therefore, defendants
were not obliged to accept them at that late date.
It is true that the contract of August 5 for the sale
and purchase of the nuts provided that they should be
shipped about the middle of October, but it is also
true that on August 16 defendants wrote plaintiff a
letter, in which they inclosed the letter of credit from
the Chicago bank to the Naples bank which letter of
credit read: ''To be in force until October 31; 1915.''
But counsel for defendants argued that this provision
only extended the time within which payment might be

made, but did not extend the time within which the shipment was to be made. We think this argument is unsound for it is obvious that the Naples bank would have paid the letter of credit upon presentation to it of a proper bill of lading transferring the nuts to the defendants up until October 31, without regard to when the nuts were actually placed on board the vessel. This letter of credit, while prepared by the Chicago bank, was inclosed by defendants in a letter from them to plaintiff and thereby became a part of defendants' letter just as if it had been incorporated therein. We hold, therefore, that the contract was modified so as to permit the shipment of nuts any time prior to October 31.

Defendants further contend that the judgment should be affirmed for the reason that the title to the nuts never vested in them because the bill of lading was not delivered to them, and that in order to pass title the bill of lading should have been properly indorsed and delivered to them; that since this was not done defendants did not own the nuts at the time the boat sunk and, therefore, the loss is that of the plaintiff. In support of this, defendants cite the cases of *Brandenstein v. George Rasmussen Co.,* 192 Ill. App. 545, and *Brown v. Max Malter Co.,* 184 Ill. App. 621. These two cases were decided before July 1, 1915, the date on which the Uniform Sales Act became effective in this State, and the law as announced in the two cases cited has been changed by that act. Paragraph 2 of section 20 of the Act [Callaghan's 1916 Stat. ¶ 10021(23)] provides: "Where goods are shipped, and by the bill of lading the goods are deliverable to the seller of [or] his agent, or to the order of the seller or of his agent, the seller thereby reserves the property in the goods. But if, except for the form of the bill of lading, the property would have passed to the buyer on shipment of the goods, the seller's property in the goods shall be deemed to be only for

the purpose of securing performance by the buyer of his obligations under the contract." Paragraph (a) of section 22 [Callaghan's 1916 Stat. ¶ 10021(25)] provides: "Where delivery of the goods has been made to the buyer, or to a bailee for the buyer, in pursuance of the contract and the property in the goods has been retained by the seller merely to secure performance by the buyer of his obligations under the contract, the goods are at the buyer's risk from the time of such delivery." The only reason that defendants urge for the contention that the title to the nuts did not pass to them at the time the nuts were put on board the ship at Naples is that plaintiff, the shipper, retained possession and control over the bill of lading. But under the two provisions above quoted, we think plaintiff retained the bill of lading merely to secure payment for the nuts—"only for the purpose of securing performance by the buyer of his obligations under the contract." This being true, the nuts, from the time they were put on the vessel, were "at the buyer's risk from the time of such delivery." It is obvious that it was the intention of both parties that the bill of lading was not to be delivered up by plaintiff to the Naples bank except upon payment for the nuts, and undoubtedly that bank would have paid plaintiff if the bill of lading and letter of credit had been presented before closing on Saturday, October 30. It follows, therefore, that the nuts were at the buyer's risk at the time the boat was sunk, and defendants must pay for them unless they are excused, as they claim they are, by the failure of plaintiff to seasonably notify them of the date the ship was to sail, so as to enable them to effect marine and war insurance. In support of this contention defendants' counsel refer to paragraph 3, section 46 of the Uniform Sales Act [Callaghan's 1916 Stat. ¶ 10021(49)], which is as follows: "Unless otherwise agreed, where goods are sent by the seller to the buyer under cir-

cumstances in which the seller knows or ought to know that it is usual to insure, the seller must give such notice to the buyer as may enable him to insure them during their transit, and, if the seller fails to do so, the goods shall be deemed to be at his risk during such transit." It is argued that on November 1 plaintiff notified defendants by letter that the shipment was to be made on the *S. S. Ancona,* sailing from Naples on November 9 and, therefore, the boat having sailed on November 6, the notice was wrong and misled defendants; that defendants attempted to effect insurance on November 9, but were advised on November 10 by their agents that it was too late to effect the insurance for the reason that prior to that time the boat had been sunk. Of course, if the boat was to sail on November 9 from Naples, as a practical matter, it would have been too late for defendants in Chicago to first set about to insure the nuts on the same date.. And, furthermore, in view of the great uncertainty of shipping occasioned by the war, such notice as might have been given could at best have been but very inaccurate. But in any event the correspondence from the plaintiff and his agent to defendants notifying them of the date when the boat was to sail was not given with a view of informing defendants so they could effect the insurance, for nothing of the kind is mentioned in the correspondence, but it appears that the purpose of the notification was so that defendants would be advised when to expect to receive the nuts in New York City or Chicago. Moreover, we think the plaintiff was not required to notify defendants of the delivery of the nuts to the steamship company for the purpose of effecting insurance, for the contract of August 5, 1915, expressly provides, "Marine and war insurance to be covered by consignees," and the letter of credit of August 14 expressly said that such insurance had been effected by defendants. It stated: "Insurance, including

war risk, effected by the importers." Paragraph 3, section 46 of the Uniform Sales Act, above quoted, provides that the seller must give notice to the buyer so as to enable the latter to effect insurance during the transit unless it has been otherwise agreed between them. In the instant case it had been otherwise agreed between them for the contract provided that the defendants were to insure the nuts, and the letter of credit stated that such insurance had been effected.

It follows from what we have said that defendants cannot be relieved for want of any notice in regard to the insurance.

Plaintiff asks that the judgment of the trial court be reversed but that the cause be not remanded for the reason that the facts are all before this court, and, therefore, judgment can be entered here in favor of plaintiff, a jury having been waived. While the case was decided for defendants at the close of the plaintiff's evidence, yet we think the evidence introduced brings before us all the facts and that there is nothing set up in defendants' affidavit of merits that might be supported by any other evidence. Therefore, the judgment of the municipal court of Chicago is reversed, and since the amount is not in dispute and a jury was waived, judgment will be entered in this court for $2,545 in favor of the plaintiff and against the defendants.

*Judgment reversed and judgment here.*

Taylor, P. J., and Thomson, J., concur.